UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

ANTHONY ROMANO,

          Plaintiff,

v.

KEITH ULRICH, et al.,

          Defendants.

───────────────────────────────

**DECISION AND ORDER**

1:13-CV-00633 EAW

## INTRODUCTION

Plaintiff Anthony Romano ("Plaintiff") commenced this action on June 17, 2013, alleging excessive use of force in violation of his civil rights. (Dkt. 1). Defendants answered the complaint on March 20, 2014, asserting, *inter alia*, that Plaintiff failed to exhaust his administrative remedies prior to filing suit in this Court. (Dkt. 9 at ¶ 11-12). Currently pending before the Court are Plaintiff's motion to appoint counsel (Dkt. 70), and Defendants' motion for summary judgment (Dkt. 56). For the reasons stated below, Plaintiff's motion is denied, and Defendants' motion is granted.

## DISCUSSION

**I.**    **Appointment of Counsel is Not Warranted**

Plaintiff requests that this Court appoint counsel to litigate the case on his behalf. (Dkt. 70). Pursuant to 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc.*, 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion. *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984). The

court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989). Particular attention must be paid to the merits of the plaintiff's claim. *Id.* ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))). This is because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Id.* Additionally, for prison inmates, the court must also give weight to the plaintiff's lack of practical access to attorneys. *Id.* at 173-74.

Plaintiff was in prison when he filed the complaint, and remains in custody. Plaintiff has previously been granted leave to proceed *in forma pauperis*. (Dkt. 4). Plaintiff has conclusively shown that he is indigent, and has met the threshold test for appointing counsel. However, on balance, the *Cooper* factors weigh against appointing counsel at this time.

Plaintiff was previously appointed counsel to represent him in this case. (Dkt. 12). Two years later, as discovery was coming to a close, Plaintiff's counsel moved to withdraw. (Dkt. 51). United States Magistrate Judge Hugh B. Scott granted the motion due to a breakdown in the attorney-client relationship, arising out of Plaintiff's refusing to meet with counsel during scheduled visits. (Dkt. 52; Dkt. 54). The Court has previously denied re-appointment of counsel. (Dkt. 58; Dkt. 61).

Plaintiff has not established that he has a likelihood of success on the merits. As described below, summary judgment for Defendants is appropriate because Plaintiff failed to exhaust administrative remedies before bringing this action. Thus, the appointment of counsel is unwarranted.

The Court also notes that Plaintiff has not submitted any evidence that he has attempted to obtain an attorney. Although Plaintiff is incarcerated, this alone is not an absolute barrier to finding counsel to litigating on his behalf.

Additionally, as Magistrate Judge Scott found, Plaintiff's "behavior with appointed counsel makes expending the scarce resource of volunteer attorney time problematic." (Dkt. 58 at 7). Even if Plaintiff could establish a likelihood of success, his prior behavior with appointed counsel weighs heavily against again appointing counsel.

On balance, and for the reasons stated above, Plaintiff's motion to appoint counsel is denied.

## II. Summary Judgment is Appropriate

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

B. **Factual Background**

The facts here are as alleged in Defendants' Statement of Undisputed Facts, unless otherwise noted.[1] (*See* Dkt. 56-1). Plaintiff is an inmate formerly housed at the Attica

---

[1] Generally, if a party fails to oppose a Rule 56 statement, those facts are deemed admitted. *See* L.R. Civ. P. 56(a)(2) ("The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement. . . . Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement."); Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion. . . ."). The Second Circuit has indicated that a district court should not deem unopposed facts admitted when those facts are unsupported in the record. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001).

Here, Plaintiff failed to oppose Defendants' Statement of Undisputed Facts. Each factual assertion within Defendants' Statement of Undisputed Facts is either taken from the complaint or supported by a citation to exhibits sufficient to prove those factual assertions. (*See* Dkt. 56-1). Accordingly, the Court deems the factual allegations in Defendants' Statement of Undisputed Facts admitted. *See* Fed. R. Civ. P. 56(e)(2); *N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998); *Thurmond v. Bowman*, 211 F. Supp. 3d 554, 562 (W.D.N.Y. 2016).

Correctional Facility ("Attica"), a New York Department of Corrections and Community Supervision ("DOCCS") facility. (*See id.* at ¶ 14). At the relevant times, Defendants were corrections officers at Attica. (*Id.* at ¶¶ 2-13). Plaintiff alleges that on February 17, 2011, he was beaten by Defendants, causing injury. (Dkt. 1 at 5-6). The following day, Plaintiff was moved from his cell to Attica's infirmary, where he was held until February 22, 2011. (Dkt. 56-1 at ¶¶ 16-19). From February 22, 2011, until March 2, 2011, Plaintiff was held in an Office of Mental Health ("OMH") observation cell at Attica. (*Id.* at ¶¶ 19-20). On March 2, 2011, Plaintiff was transferred to OMH's Central New York Psychiatric Center ("CNYPC") in Marcy, New York, where he remained until September 22, 2011. (*Id.* at ¶¶ 20-21). Plaintiff was then transferred to Great Meadow Correctional Facility ("Great Meadow"). (*Id.* at ¶ 22).

Plaintiff attempted to file a grievance at Attica relating to the alleged beating "[i]n early May 2011 . . . while he was housed at CNYPC." (*Id.* at ¶ 23). The grievance was refused because it was untimely, "grievances need to be filed at the facility at which the inmate is housed," and Plaintiff was not allowed to file grievances with DOCCS while in OMH custody. (*Id.* at ¶ 24). Plaintiff again tried to file a grievance at Attica in early November 2011 while he was housed at Great Meadow. (*Id.* at ¶ 25). That grievance was refused as untimely, and because "grievances need to be filed at the facility at which the inmate is housed." (*Id.* at ¶ 26). Plaintiff did not appeal either refusal, nor did he submit a separate grievance to challenge the refusals. (*Id.* at ¶¶ 31-32).

## C. Plaintiff Failed to Exhaust Administrative Remedies

Defendants' only argument on summary judgment is that Plaintiff failed to exhaust administrative remedies. (Dkt. 56-9 at 3-8). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step [DOCCS] grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the [CORC]. In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (citations omitted). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011).

"[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003). Pursuant to the Second Circuit's decision in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1) the administrative remedies were not in fact available; [or] (2) prison officials have forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3) 'special circumstances justify the prisoner's failure to comply with administrative procedural requirements.'" *Dabney v. Pegano*, 604 F. App'x 1, 3 (2d Cir. 2015) (quoting

*Hemphill*, 380 F.3d at 686). However, the third prong of *Hemphill*, relating to "special circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake*, 136 S. Ct. 1850 (2016). *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016). Any inquiry which previously would have been considered under the third prong of *Hemphill*, is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

*Ross* provides three circumstances in which administrative remedies are unavailable: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the grievance system is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. However, the *Ross* list of circumstances "do[es] not appear to be exhaustive. . . ." *Williams*, 829 F.3d at 123 n.2.

Whether the regulations provide a procedural route to administrative relief is an objective question. *Rodriguez v. Reppert*, 14-CV-671-RJA-MJR, 2016 WL 6993383, at *2 (W.D.N.Y. Nov. 30, 2016) ("[T]he question, according to [*Williams*], is whether 'the regulations contemplate the situation in which the prisoner finds himself.' This is an objective question: the regulations either provide the inmate with a procedural route to obtain administrative relief, or they do not." (internal citation omitted)). Although a grievance generally must be filed within 21 days of the incident giving rise to the complaint, N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1), the grievance regulations

provide that a grievance program supervisor may allow a complaint more than 21 days after the date of the incident. *Id.* § 701.6(g). However, the supervisor may not grant an exception "if the request was made more than 45 days after an alleged occurrence." *Id.* § 701.6(g)(1)(i)(*a*); *see, e.g., Shaw v. Ortiz*, Case No. 15-CV-8964 (KMK), 2016 WL 7410722, at *2 (S.D.N.Y. Dec. 21, 2016) ("[A]n inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence . . . but no exception will be granted if the request was made more than 45 days after the alleged occurrence."). An inmate may file an additional grievance, complaining that the supervisor failed to provide an exception, but the regulations do not allow for any extension of the 45-day filing deadline. *Williams*, 829 F.3d at 125-26 ("[E]ven though [the regulation] suggests that an inmate could file a separate complaint grieving the denial of an exception to the filing deadline, such a grievance would be futile given that the regulations do not give the [grievance program] supervisor authority to grant an exception beyond 45 days of the initial incident.").

Here, Plaintiff has not challenged Defendants' assertion that he failed to properly grieve the alleged February 17, 2011, beating. Plaintiff did not file his first grievance until May 2011, well beyond the 21 days allowed by DOCCS regulations. A prisoner's detention in OMH custody—during which the prisoner is not allowed to file any grievances with DOCCS (*see* Dkt. 56-1 at ¶ 24)—may qualify as a "dead end" under *Ross*'s first prong. However, even assuming this to be true, Plaintiff was not in OMH custody for the entirety of the 21-day period. Immediately following the alleged incident, Plaintiff was housed in the Attica infirmary for five days. He could have filed a

grievance during this time, but failed to do so.[2] Such a grievance would have been timely, and filed with the facility at which Plaintiff was housed. Plaintiff also did not attempt to file a grievance within the 21-day time period (or the 45-day extended period) while he was in OMH custody. Instead, Plaintiff attempted to file a grievance while in OMH custody, long after the deadline for doing so, and then once released from OMH custody, he attempted to file a grievance, but at the wrong facility. Thus, Plaintiff failed to appropriately pursue his grievance rights while in OMH custody and afterwards.

More importantly, Plaintiff failed to appeal either refusal to accept his grievances, including the refusal to accept his grievance while in OMH custody. As such, Plaintiff failed to exhaust the remedies available to him. *See, e.g., Hicks v. Adams*, \_\_ F. App'x \_\_, 2017 WL 2628874, at *1 (2d Cir. June 19, 2017) ("[The plaintiff] failed to exhaust because he did not properly appeal the warden's rejection of his grievances and thus did not comply with applicable procedural requirements.").

Additionally, this is not a case where the grievance system was "so opaque" such that it prevented Plaintiff from properly presenting his claim. Plaintiff was no stranger to the DOCCS grievance system, having filed at least 28 grievances between December 2006 and December 2010. (*See* Dkt. 56-3 at 1-2). Plaintiff was also aware that he could grieve DOCCS's failure to file a grievance. He had done just that in December 2010. (*Id.* at 1 (showing a grievance for "Grievances Not Filed")).

---

[2] There may be circumstances in which a prisoner held in an infirmary might, for medical reasons, be physically unable to file a grievance. However, Plaintiff has not put forth any reason that he was unable to file a grievance while he was in the infirmary.

Plaintiff failed to exhaust administrative remedies before filing suit in this Court. As such, summary judgment is appropriate. *See, e.g., Mayo v. Lewis*, __ F. App'x __, 2017 WL 1493680, at *2 (2d Cir. Apr. 26, 2017) (finding that the plaintiff failed to show an exception under *Ross* where he presented "no evidence indicating that any of [the exceptions] appl[ied] to his situation").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to appoint counsel (Dkt. 70) is denied, and Defendants' motion for summary judgment (Dkt. 56) is granted. The Clerk of Court is instructed to close the case.

SO ORDERED.

                                              ELIZABETH A. WOLFORD
                                              United States District Judge

Dated: August 28, 2017
            Rochester, New York