

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY ROMANO,                          1:13-CV-00633 JLS (MJR)

                    Plaintiff,           REPORT AND
                                         RECOMMENDATION

        v.

KEVIN ULRICH, *et al.*,

                    Defendants.

_____

## INTRODUCTION

This prisoner civil-rights action has been remanded by the Second Circuit for further proceedings to determine whether plaintiff Anthony Romano exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").[1]  (Dkt. No. 76)  The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) (Dkt. No. 104), and the parties have submitted their supplemental briefing.  (Dkt. No. 93, 101, 102)  For the reasons that follow, the Court recommends that defendants' motion for summary judgment be granted.

## BACKGROUND

The following facts are undisputed, unless otherwise noted.  At the time of the relevant events, all of the defendants were correctional officers at Attica Correctional Facility, and Romano was an inmate at the facility.  Romano alleges that on February 17,

---

[1] Romano filed and litigated much of this action *pro se*, but after remand Magistrate Judge Scott appointed *pro bono* counsel for "the limited purpose of responding to defendants' supplemented motion for summary judgment."  (Dkt. No. 95)

2011, defendants assaulted him.  Romano was moved from his cell to the prison infirmary, and then to a mental-health observation cell within the prison.

On March 2, 2011—thirteen days after the alleged assault—Romano was removed from the observation cell, discharged to the custody of New York's Office of Mental Health ("OMH"), and sent to the Central New York Psychiatric Center ("CNYPC").  At the time of the appeal to the Second Circuit, it was unclear what process occurred to effectuate Romano's transfer from Attica to OMH.  *See Romano v. Ulrich*, 773 F. App'x 654, 656-57 (2d Cir. 2019) (summary order).

Regardless, in early May 2011—at least seventy days after the assault—Romano attempted to file a grievance at Attica Correctional Facility related to the assault.  The grievance was denied because it was untimely and was not filed at the facility where Romano was housed, and because individuals in OMH custody were not permitted to file grievances with the New York Department of Corrections and Community Supervision ("DOCCS").  Romano did not appeal the denial of the grievance.

In September 2011, Romano was transferred from CNYPC to Great Meadow Correctional Facility.  In November 2011, Romano again attempted to file a grievance at Attica Correctional Facility, which was denied.  Romano did not appeal that decision.[2]

In June 2013, Romano brought this 42 U.S.C. § 1983 action based on the assault allegations.  In August 2017, District Judge Elizabeth A. Wolford granted summary judgment in defendants' favor.  (Dkt. Nos. 71, 72)  In July 2019, the Second Circuit vacated the judgment and remanded for further proceedings.  (Dkt. No. 76)

---

[2] Romano does not dispute that he failed to appeal either grievance, though he notes that he wrote follow-up letters to the official who denied the first grievance.  (Dkt. No. 101-2 ¶ 31)  Because Romano does not explain the relevance of that fact, the Court need not address it further.

2

## DISCUSSION

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is to be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. A genuine issue of material fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "[V]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier [of fact] could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Bay v. Times Mirror Magazine, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991); *see also Matsushia Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (summary judgment is appropriate when "the record as a whole could not lead a rational trier of fact to find for the non-moving party"). When a movant has met this burden, the burden shifts to the non-movant to bring forth evidence establishing the existence of an issue of material fact. *Linares v. McLaughlin*, 423 Fed. Appx. 84, 86 (2d Cir. 2011); *see also Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92, 97 (2d Cir. 2007) (an issue of fact is considered "material" if it "might affect the outcome of the suit under the governing law").

In evaluating a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, and it is the burden of the moving party to demonstrate the absence of any material genuinely in dispute. *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir. 1988). Importantly, a court must not "weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact."

*Victory v. Pataki*, 2016 U.S. App. LEXIS 1650 (2d Cir. 2016); *quoting Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). However, a party cannot defeat a motion for summary judgment by relying upon conclusory statements or mere allegations. *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

<u>Exhaustion</u>

Under the PLRA, "an inmate may not bring a suit in federal court with respect to prison conditions unless he has previously exhausted administrative remedies." *Romano*, 773 F. App'x at 655. "The PLRA's exhaustion requirement is mandatory," *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (internal quotation marks omitted), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandated "regardless of the relief offered through administrative procedures," *Booth v. Churner*, 532 U.S. 731, 741 (2001), and requires that the inmate "complete the administrative review process in accordance with the applicable [prison grievance] rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

However, an inmate is not required to exhaust an administrative remedy that is unavailable. "An administrative procedure is unavailable when (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the scheme is so opaque that it becomes, practically speaking, incapable of use, meaning that some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or

4

intimidation." *Hayes v. Dahlke*, 976 F.3d 259, 268 (2d Cir. 2020) (internal quotation marks omitted).

> In New York, there is a three-step administrative system for inmate grievances:
>
> (1) grievances are sent to the inmate grievance resolution committee ("IGRC"); (2) on appeal, the inmate may take his complaint to the facility superintendent; and (3) if still not satisfied, an inmate may appeal to a committee of central office staff acting on behalf of the commissioner. A grievance must be submitted within twenty-one days of the complained-of event. An inmate may request an exception to the time limit for filing a grievance, but such an exception may be made only for mitigating circumstances, and only if the request is made within forty-five days of the alleged occurrence. The complaint may only be filed at the facility where the inmate is housed even if it pertains to another facility. And any appeal of a grievance must be filed at the facility where the original grievance was filed, even if the inmate has been subsequently transferred.

*Romano*, 773 F. App'x at 656 (internal citations and quotation marks omitted).

With respect to defendants' first motion for summary judgment, Judge Wolford applied these standards and concluded that Romano had failed to exhaust his administrative remedies. *Romano v. Ulrich*, No. 13-CV-633, 2017 WL 3701972 (W.D.N.Y. Aug. 28, 2017). She acknowledged there was a wrinkle in Romano's case: he was transferred to OMH custody before the 21-day grievance period elapsed, and, once in OMH custody, he "was not allowed to file grievances" with DOCCS. *See id.* at *2. This could arguably mean that the grievance procedure was not fully "available" to Romano. *See id.* at *4.

Nevertheless, even accepting that Romano may not have had the full twenty-one days to file his grievance, Judge Wolford concluded that Romano had "failed to appropriately pursue his grievance rights while in OMH custody and afterwards"— specifically, he (1) did not even attempt to file his first grievance until "well beyond" the

21-day deadline; (2) filed his second untimely grievance at the wrong facility; and (3) failed to appeal "either refusal to accept his grievances." *Id.* Judge Wolford therefore concluded that, based on the undisputed facts, Romano had "failed to exhaust administrative remedies before filing suit" and that summary judgment in defendants' favor was appropriate. *Id.*

The Second Circuit vacated the judgment and remanded for further proceedings. The court did not reject Judge Wolford's reasoning outright, and it declined to address the issue of whether "DOCCS's administrative procedures are 'unavailable' *whenever* DOCCS unilaterally and without notice transfers an inmate during a grieving period such that the inmate is no longer able to file a grievance." *Romano*, 773 F. App'x at 656. Instead, the Second Circuit noted that Romano may have received five days' advance notice of his OMH transfer pursuant to New York Correction Law § 402(1) & (3). *Id.* The Second Circuit then reasoned, "[p]rovided the required notice was given and Romano had access to information that made clear that he would be unable to file a grievance upon his transfer outside of DOCCS, we cannot see how Romano could show that DOCCS's procedure was unavailable to him on the facts of his case." *Id.* at 656-57 (internal citation omitted). In other words, if Romano had received advance notice, he would have known that he needed to file his grievance before his transfer, and, as such, the grievance procedure was "available" to him for purposes of exhaustion.

The Second Circuit remanded the case for further development of the record on this narrow factual issue, since "the record on whether and how § 402 was implemented in Romano's case [was] nonexistent." *Id.* at 657. The Second Circuit directed that, once the facts were established, the "district court should reconsider whether grievance

procedures were available to Romano, and either adhere to its original decision or allow his claim to go forward." *Id.*  The matter has now been referred to this Court.

Consistent with the remand order, the parties have submitted their supplemental papers, and they agree on how § 402 was implemented in Romano's case.  The OMH transfer was precipitated by Romano's mental health issues, and the parties agree that Romano was transferred "using the procedure set forth in New York Correction Law § 402(9)"—not subsections (1) & (3), which the Second Circuit cited.  (Dkt. No. 91 at 4; Dkt. No. 101-2 at 4)  Under § 402(9), an inmate may be admitted on an emergency basis to OMH custody, without the procedural protections and notice that are normally afforded to mentally ill inmates before commitment.  *See Bailey v. Pataki*, 708 F.3d 391, 394-95 (2d Cir. 2013) (summarizing procedural protections and noting that they may be bypassed only "where admission to a hospital is sought on an emergency basis" pursuant to § 402(9)).  As a result, defendants appear to concede that Romano received no advance notice of his transfer to OMH custody.

This resolves the factual issue that the Second Circuit directed the Court to address.  However, because it is now clear that Romano was transferred pursuant to § 402(9), the facts do not support the Second Circuit's proposed theory that Romano may have received advance notice of his OMH transfer and, therefore, may have had the grievance procedures "available" to him for the five days preceding his transfer.  Based upon these undisputed facts, the Court cannot resolve the exhaustion issue in the manner proposed by the Second Circuit.

Thus, the relevant question is this: did Romano's impromptu transfer to OMH custody render the grievance procedures unavailable to him for exhaustion purposes?

7

(*See* Dkt. No. 93 at 2-3; Dkt. No. 101 at 5-7)  The Court need not answer this question in the first instance, as Judge Wolford already resolved it in her August 2017 Decision & Order.  Judge Wolford concluded that, notwithstanding the impromptu transfer to OMH custody, Romano still failed to exhaust his administrative remedies.  *See Romano*, 2017 WL 3701972, at *4.  In reaching that conclusion, Judge Wolford highlighted the facts that Romano (1) did not even attempt to file his first grievance until "well beyond" the 21-day deadline; (2) filed his second untimely grievance at the wrong facility; and (3) failed to appeal "either refusal to accept his grievances."  *Id.*

The Court is not in a position to reconsider Judge Wolford's decision.  To be sure, the Second Circuit vacated Judge Wolford's decision and remanded the case for further development of the record, but it did not address Judge Wolford's legal reasoning, let alone reject it.  Indeed, the Second Circuit acknowledged that it may be appropriate for the district court to "adhere to its original decision" on remand.  *Romano*, 773 F. App'x at 657.

Because Judge Wolford has definitively addressed the dispositive legal question, and because the Second Circuit has not rejected her rationale, the Court declines to reconsider her decision.  For the reasons stated in Judge Wolford's August 2017 Decision & Order, Romano failed to exhaust his administrative remedies before filing suit, and summary judgment in defendants' favor is appropriate.  *See Romano*, 2017 WL 3701972, at *4.

## CONCLUSION

For the reasons stated above, the Court recommends that defendants' motion for summary judgment (Dkt. No. 56) be granted.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.  Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.***  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

9

**SO ORDERED.**

DATED:       March 24, 2021
             Buffalo, New York


_____
HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge